UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GEORGE MICHAEL JENKINS,

    Plaintiff,

v.                            Case No. 3:14-cv-1503-J-39MCR

JULIE L. JONES, etc.; et al.,

    Defendants.

_____

**ORDER**

**I. Status**

This matter is before the Court on Defendants [Warden Walker Clemmons, Kenneth Tucker and Julie L. Jones] Motion to Dismiss Plaintiff's Second Amended Complaint (Motion) (Doc. 42). Defendant Chris Landrum filed a Notice of Adoption of Co-Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 50). Plaintiff filed a Response to Defendants' Motion to Dismiss[1] (Response) (Doc. 44). Plaintiff is proceeding on a Second Amended Complaint (Complaint)[2] (Doc. 39) and is represented by counsel.

**II. Standard of Review**

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft

---

[1] Plaintiff also filed a Request for Oral Argument in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 49); however, the Court declines to hold oral argument as a decision can appropriately be rendered on the documents before the Court.

[2] The Court references the pagination assigned by the electronic filing system.

v. Iqbal, 556 U.S. 662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). While "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (citation and footnote omitted).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal

conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Second Amended Complaint[3]

As Defendants, Plaintiff names Julie L. Jones, the Secretary of the Florida Department of Corrections (FDOC), in her official capacity; Kenneth S. Tucker, a former Secretary of the FDOC, in his official and individual capacities; Walker Clemmons, Warden of Suwannee Correctional Institution (SCI), in his official capacity; and Chris Landrum, a former Warden of SCI, in his official and individual capacities.[4] Complaint at 1. Plaintiff, in his Second

---

[3] In considering the Motion, the Court must accept all factual allegations in the Complaint (Doc. 39) as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

[4] Plaintiff names other Defendants, Michael Humphrey, a former correctional officer at SCI in his individual and official

Cause of Action Supervisory Liability/Respondeat Superior, raises the following claim against these particular Defendants:

> This is a § 1983 action for compensatory, declaratory, and punitive damages for Supervisory Liability/Respondeat Superior directed against Defendants Jones, Tucker, Clemmons, and Landrum ("Superior Officers"), in regards to their failure to train and/or supervise Defendants Rogers, Corbin, and Humphrey ("Subordinate Officers"), as well as their implementation of customs and/or policies of abuse towards incarcerated inpatients at the Suwannee Correctional Institution.

Complaint at 9 (paragraph enumeration omitted).

Plaintiff seeks general, compensatory, and punitive damages, and such other relief as the Court deems appropriate. Id. at 14. Notably, Plaintiff does not seek declaratory and injunctive relief in his Complaint. Of import, he is no longer confined in the FDOC.

Generally, Plaintiff alleges that on November 11, 2011, he was confined as an inpatient within the prison infirmary/medical isolation area at SCI. Id. at 3. Plaintiff had two ongoing medical issues/disputes at the time of the incident. He had filed grievances concerning the removal of his wheelchair from his cell without his consent. Id. at 4. On the morning of the incident, he refused a management meal, complaining that the meals were

---

capacities, James H. Rogers, a former sergeant at SCI, in his individual and official capacities, and Leon J. Corbin, III, a former sergeant at SCI, in his individual and official capacities, but the Court will not address the claim against them in this Order. Of note, these particular Defendants have not been served with the Second Amended Complaint.

worsening his medical condition, and requested a doctor's opinion. Id.

Nurse Hancock, at 7:10 a.m., noted in Plaintiff's Chronological Record of Health Care (Record), that Plaintiff had wrapped his hand and banged on his window for approximately fifty minutes and had "acted out" the previous two evenings. Id. Plaintiff counters that he, for a few minutes, called out for assistance concerning his medical concerns. Id. Nurse Bisque, at 2:10 p.m., made an entry in the Record that another nurse informed her that Plaintiff was agitated about his tray issues (meals). Id. Security was notified that Plaintiff had been disruptive. Id.

At 9:15 a.m., Defendant Humphrey told Plaintiff he was at the cell to conduct a search. Plaintiff was taken out of his cell in a wheelchair. Id. Defendants Corbin and Rogers were in the hallway with Lieutenant Jason Keith. Id. Lieutenant Keith stepped away. Id. Defendant Humphrey began taking Plaintiff's property out of the cell, and then Plaintiff was informed that his property was being confiscated. Id. at 4-5.

Defendant Corbin reported that he removed all of the property from Plaintiff's cell and placed Plaintiff on 72-hour property restriction due to Plaintiff's disruptive behavior. Id. at 4. The Report of Force Used does not mention whether a superior officer authorized the cell search and property seizure. Id. at 5.

Defendant Humphrey removed Plaintiff's bed (consisting of a mattress) from his cell. Id. Because there was a small tear on the side of the mattress, it was confiscated as a safety concern. Id. Defendant Humphrey confiscated the wheelchair, stating it could be used as a weapon. Id. Defendants Corbin, Rogers, and Humphrey told Plaintiff they would be conducting a strip search of Plaintiff. Id. Defendant Corbin and Humphrey assisted Plaintiff out of the wheelchair and onto the concrete floor. Id. They told Plaintiff he caused too many disturbances and filed too many grievances, so they did not want him in the clinic. Id.

A few moments later, Plaintiff refused to re-enter the cell. Id. He told the officers he did not want to sleep on the concrete floor. Id. He requested a new bed for his cell, or an explanation as to when a bed would be provided. Id. at 5-6. He also requested that a wheelchair be made available to him. Id. at 6.

At this point, Defendant Humphrey told Plaintiff they needed to conduct a strip search. Id. He ordered Plaintiff to remove his clothes. Id. Plaintiff removed some of his clothes, but did not remove his medical gown/underwear shirt, ignoring orders to do so. Id. Defendants Humphrey and Corbin conducted a "spontaneous use of force" in an effort to undress Plaintiff. Id. A struggle ensued, with all three men in the vestibule with Plaintiff's legs inside of the cell. Id. Defendant Rogers joined the struggle, holding Plaintiff's hands and shoulders. Id. Defendant Corbin pressed

Plaintiff's face into the floor.  Id.  Plaintiff's medical gown, his only article of clothing, rolled up past his stomach.  Id. Moments later, Defendant Humphrey sexually assaulted Plaintiff with an object (a broomstick, handle, baton or weapon) for approximately fifteen seconds.[5]  Id.  After the Defendants departed, Plaintiff screamed for five minutes about the assault.  Id.  Approximately fifteen minutes after the incident, someone made a post-use-of-force video.  Id.

Plaintiff's seized property, including pens and paper, were confiscated and never returned.  Id. at 7.  Other inmates helped Plaintiff contact his previous counsel by mailing a letter.  Id. Plaintiff grieved the matter and demanded a medical examination. Id.  A medical examination was conducted several weeks after the incident, but a record of it is not included in Plaintiff's institutional medical record.  Id.

Nurse Bisque's November 11, 2011 Emergency Room Record states there was blood and spit on the floor, but she found no need for treatment once she observed Plaintiff through the cell window.  Id. A review of this Emergency Room Record was not undertaken until November 14, 2011.  Id.

On February 12, 2014, an agent of the Federal Bureau of Investigation and an agent of the Florida Department of Law

---

[5] Plaintiff surmises that the object was a sawed-off handle of an infirmary mop, regularly stored in a nearby utility closet. Complaint at 6.

Enforcement interviewed Plaintiff on an unrelated matter. Id. at 7. Plaintiff told them he had been sexually assaulted on November 11, 2011, and sought their assistance in investigating the matter. Id.

Plaintiff claims he was subjected to the excessive use of force when he was sexually assaulted by Defendant Humphrey, who was aided by Defendants Corbin and Rogers. Id. at 9. Plaintiff believes the purpose of the assault was to deter him from filing grievances against staff. Id.

### IV. Summary of the Arguments

Defendants seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Motion at 1. In doing so, they assert: (1) Defendants are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacities for monetary damages, see Motion at 2-3; and (2) Plaintiff fails to state a claim against Defendants, id. at 3-8.

In response to Defendants' Motion, Plaintiff states that if the Court finds Defendants are entitled to Eleventh Amendment immunity with respect to the claim for monetary damages against them in their official capacities, Plaintiff would still pursue any claims raised against Defendants in their individual capacities. Response at 1. Additionally, Plaintiff asserts that he has properly and sufficiently stated a claim of excessive force in violation of the Eighth Amendment, with supervisory liability

against Defendants Clemmons, Tucker, Jones, and Landrum for failure to train and/or supervise underlings, as well as for Defendants Clemmons, Tucker, Jones, and Landrum's implementation of customs and/or policies of abuse towards incarcerated inpatients at SCI. Id. at 3.

Plaintiff states that he relies on undisputed documents that show glaring deficiencies and deviations from standard procedure in the cell search, removal of Plaintiff from his wheelchair, confiscation of Plaintiff's personal belongings and removal of his bed from his cell, the forced strip search and sexual assault, the inadequate post-use-of-force video, the denial of a proper and timely medical examination, the maintenance of the medical record, and the circumscribed Institutional Inspector's review, approved by the Defendants. Response at 2-3.

Plaintiff alleges that the Defendants were deliberately indifferent towards the abusive behavior of subordinate officers, particularly with respect to the abuse of vulnerable prisoners housed in the infirmary/medical isolation area. Id. at 3. Plaintiff contends that Defendants implemented a policy or custom "where unsupervised and undertrained officers were constantly allowed to abuse prisoners without fear of meaningful investigation into their conduct." Id. Plaintiff surmises that discovery will reveal that the Defendants "had notice of widespread abuse in the form of civil rights lawsuits, formal and informal grievances,

security and excessive use of force reports and other documentation[.]" Id.

## V. Law and Conclusions

### A. Eleventh Amendment Immunity

Defendants raise the defense of sovereign immunity to the extent Plaintiff is seeking monetary damages against them in their official capacities. Motion at 2-3. In this regard, the Motion is due to be granted. An official capacity claim for monetary damages is barred by sovereign immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-102 (1984). Thus, insofar as Plaintiff seeks monetary damages from Defendants Jones, Tucker, Clemmons, and Landrum in their official capacities, the Eleventh Amendment bars suit. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam).

Since Plaintiff names Defendant Jones and Defendant Clemmons only in their official capacities, Defendants Jones and Clemmons are due to be dismissed from this action. Thus, consideration of the Motion concerning the Defendants' assertion of failure to state a claim will be undertaken with respect to Defendant Tucker, a former Secretary of the FDOC, and Defendant Landrum, a former Warden of SCI, both named in their individual capacities as well as their official capacities.

## B. Failure to State a Claim

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted).

The Eleventh Circuit provides guidance for employing the rigorous standard for establishing supervisory liability in a civil rights action:

> "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam). Personal participation occurs when, for example, the supervisor inflicts the injury himself. See Hewett v. Jarrard, 786 F.2d 1080, 1087 (11th Cir. 1986). A causal connection can be established "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Mercado v. City of Orlando, 407 F.3d 1152, 1158 (11th Cir. 2005) (quotation omitted). This standard is quite rigorous. Id.

Smith v. LePage, 834 F.3d 1285, 1298 (11th Cir. 2016).

Acknowledging this strict limitation on supervisory liability, the Court recognizes that the Defendants may not be held liable under a theory of respondeat superior. See Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998) (finding supervisory liability requires something more than stating a claim of liability under a theory of respondeat superior).

In this case, there is no suggestion that the Defendants personally participated in the alleged violation. Plaintiff submits, however, that there is a causal connection between the Defendants' actions or inactions and the alleged federal constitutional deprivation. The question is whether Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. In order to make this determination, a few factors must be considered.

First, "[a] policy is a decision that is officially adopted by the [government entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted), cert. denied, 522 U.S. 1075 (1998). Liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)).

Of course, a supervisor/policymaker rarely makes official the adoption of a policy that permits a particular constitutional violation. As a consequence, in order to state a cause of action for damages under § 1983, a plaintiff must ordinarily demonstrate that there is a custom or practice of permitting the violation. See Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1330 (11th Cir. 2003); McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit defines "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489. In order to establish liability, there must be a direct causal link between the policy or custom and the alleged constitutional deprivation. Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

The question arises as to whether Plaintiff has sufficiently alleged a causal connection between the actions of Defendants Tucker and Landrum and the alleged constitutional deprivation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). A necessary causal connection can be established if: (1) the supervisor knew about and failed to correct a widespread history of

abuse; or (2) the supervisor's custom or policy resulted in a constitutional violation; or (3a) the supervisor directed the subordinate to act unlawfully; or (3b) the supervisor knew that the subordinate would act unlawfully and failed to stop him from acting unlawfully.  Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014); Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  But, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  Id. at 1360-61 (internal quotation marks omitted and citation omitted).

Plaintiff does not allege that these Defendants personally participated in the alleged use of excessive force, nor does Plaintiff contend that the Defendants directed the officers to use force against Plaintiff.  Instead, Plaintiff alleges a persistent and widespread custom of abuse at SCI in an attempt to impose liability upon Defendants Tucker and Landrum.  Plaintiff contends that Defendants Tucker and Landrum implemented a policy or custom of allowing the abuse of inmates by undertrained and unsupervised officers, creating a prison environment where the use of gratuitous force against prisoners is unrestrained and rampant.  Plaintiff asserts that Defendants Tucker and Landrum were deliberately indifferent to the health and safety of the vulnerable prisoners housed in the infirmary/medical isolation area.

"A policy may be deliberately indifferent if it is facially unconstitutional or where the policy is implemented 'with deliberate indifference as to its known or obvious consequences.'" Fields v. Corizon Health, Inc., 490 F. App'x 174, 182 (11th Cir. 2012) (per curiam) (quoting McDowell, 392 F.3d at 1291). Here, Plaintiff alleges that Defendants knew of the persistent and widespread practice of abuse at SCI, particularly with regard to vulnerable inpatient inmates at SCI, and allowed the abuse of inmates to go undeterred by failing to appropriately supervise and properly train the officers.

The Eleventh Circuit has provided guidance for this Court's review:

> We do not recognize vicarious liability, including respondeat superior, in § 1983 actions. Cottone, 326 F.3d at 1360. In order to establish that a defendant committed a constitutional violation in his supervisory capacity, a plaintiff must show that the defendant instituted a "custom or policy [that] result[s] in deliberate indifference to constitutional rights or ... directed [his] subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." West v. Tillman, 496 F.3d 1321, 1328-29 (11th Cir.2007) (per curiam) (first and second alterations in original) (internal quotation marks omitted) (quoting Cottone, 326 F.3d at 1360).
>
> As we have explained, "[a] policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell

> v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law. City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Demonstrating a policy or custom requires "show[ing] a persistent and wide-spread practice." Depew v. City of St. Mary's, Ga., 787 F.2d 1496, 1499 (11th Cir. 1986).

Goebert v. Lee Cty., 510 F.3d 1312, 1331–32 (11th Cir. 2007).

In order to show a persistent or wide-spread practice of abuse, a showing of isolated occurrences is not enough; the deprivations must be obvious, flagrant, rampant, and of lengthy duration. Id. at 1332 (citations omitted). A warden, "the person charged with directing the governance, discipline, and policy of the prison and enforcing its orders, rules, and regulations" bears the responsibility of taking appropriate measures to improve prisoner safety, particularly if his failure to do so would create a climate that preordained the use of excessive force and abhorrent acts. Mathews v. Crosby, 480 F.3d 1265, 1275 (11th Cir. 2007), cert. denied, 552 U.S. 1095 (2008). Also of import, the Secretary, the head of the corrections institution, if charged with the responsibility of disciplining underlings and setting Department policy, may be liable for failing to take corrective actions in the face of a pattern of excessive force and unjustified assaults by officers. Id. at 1275-76. Thus, in this case, Defendants Tucker and Landrum could face liability under § 1983 predicated on either

a failure to take reasonable steps in the face of persistent or a widespread practice of abuse, or by a showing of the adoption of customs or policies deliberately indifferent to the health and safety of vulnerable inmates.  Id. at 1275.

In the Complaint, Plaintiff asserts that superior officers failed to properly supervise or train the officers, as evidenced by the conduct of the officers during the cell search, property seizure, sexual assault, and the poor response to the same during institutional review.  Complaint at 11.  Plaintiff also submits that there is a causal link between the failure to train and/or supervise the subordinate officials and the violation of Plaintiff's rights.  Id.  He explains that officers were allowed to conduct cell searches and seizures without written authorization, with little to no supervision, and with a complete lack of accountability.  Id. at 11-12.  He contends that the reports generated by the incident also evince inadequate training and supervision as they are circumscribed and lack essential information for meaningful review and raise suspicion because they contain glaring inconsistencies.  Id. at 12.  As an example, Plaintiff points to the delay in the medical examination for the sexual assault and the absence of the related medical report in his official medical history as the product of poor training in documentation and the result of inadequate supervision after the report of a sexual assault upon an inmate.  Id.

Plaintiff complains that the Defendants were deliberately indifferent to the risk of harm to Plaintiff because they "did in fact infer that the constant filing of formal grievances would lead [to] an eventual unlawful and excessive use of force by the Subordinate Officers, who operated without proper training and supervision and disliked Mr. Jenkins because he continued to file formal grievances against staff." Id. at 13. Plaintiff further alleges that the failure to train the officers and failure to adopt safety protocols in the medical infirmary led to the improper conduct of the officers during cell searches and property seizures. Id.

Although a "general allegation that a pattern of abuse existed is insufficient to satisfy the standards of Twombly and Iqbal[,]" Cooper v. City of Starke, Fla., No. 310-cv-280-J-34MCR, 2011 WL 1100142, at *8 (M.D. Fla. March 23, 2011), at this juncture, the Court is reluctant to find that Plaintiff has failed to state a claim of deliberate indifference to his health and safety. There is more than just a "[t]hreadbare recital[]," Iqbal, 129 S.Ct. at 1949, of a persistent and widespread practice that led to the alleged excessive use of force. Indeed, Plaintiff alleges that the supervisors' custom or policy resulted in a constitutional violation. He also contends that there was a failure to train; "[a] failure to train amounts to deliberate indifference when 'the need for more or different training is obvious, such as when there

exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right.'" Cooper, 2011 WL 1100142, at *5 (quoting Belcher v. City of Foley, Ala., 30 F.3d 1390, 1397-98 (11th Cir. 1994)).

Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. If Defendants Tucker and Landrum file a motion for summary judgment, they are directed to state with particularity the supporting evidentiary basis for granting summary disposition of this case. And, in response, Plaintiff is expected to attach as exhibits the specific documents which may show that the Defendants were aware of the threat to Plaintiff's health and safety, including grievances, institutional appeals, relevant reports of the Inspector General, affidavits, use of force reports, and other materials. Plaintiff should not generally refer to all grievances to support his position. This shotgun approach will not be favorably received at the summary judgment stage of this proceeding.

The Court concludes that Defendant Tucker and Landrum's Motion to Dismiss should be denied with respect to the assertion that Plaintiff fails to state a claim against them in their individual capacities. Thus, they will be directed to respond to the Second Amended Complaint.

Therefore, it is now

**ORDERED:**

1. Defendants' [Defendant Jones, Defendant Tucker, Defendant Clemmons, and Defendant Landrum] Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 42) (adopted by Defendant Landrum in Doc. 50) is **GRANTED** to the extent that Plaintiff seeks monetary damages from them in their official capacities.

2. Defendant Julie L. Jones, Secretary of the Florida Department of Corrections, and Walker Clemmons, Warden of Suwannee Correctional Institution, are **dismissed** from this action.

3. Defendant Tucker (in his individual capacity) and Defendant Landrum (in his individual capacity) shall respond to the Second Amended Complaint by **October 2, 2017.**

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of August, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 8/7
c:
Counsel of Record